JUAN HERNÁNDEZ BATALLA, Petitioner, *v.* TAX COURT OF PUERTO RICO, Defendant; TREASURER OF PUERTO RICO, Intervener.

No. 259. Argued April 1, 1951.—Decided September 12, 1952.

*A. Ramírez Silva* for petitioner. *Víctor Gutiérrez Franqui, Attorney General,* (*V. Géigel Polanco,* former *Attorney General,* on the brief) and *Cándido Ceballos, Assistant Attorney General,* for intervener, defendant in the main action.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

On January 30, 1948 petitioner herein was notified by the Treasurer of Puerto Rico of income tax deficiencies corresponding to the taxable years 1941 and 1943. Said deficiencies included income derived from real property inherited by Ana Adelaida and Carlos Juan Bianchi Foote, who were minors—children of petitioner's wife, Ana Elena Foote, from her first marriage to Carlos Bianchi Green—from their paternal grandfather Juan Bianchi Rosafa.

Motion for reconsideration of said deficiency was denied by the Treasurer, and petitioner filed a proper and timely complaint in the extinct Tax Court. After the corresponding hearing, his complaint was dismissed, and since he filed no objection to the computation which was timely notified to him, it was approved and the amount paid by petitioner.

We issued the writ of certiorari, under the authority of the legislation then in force, to review the decision of the Tax Court to the effect that the petitioner was bound to include in his income tax returns for the years 1941 and 1943 the incomes derived from the real property inherited by his wife's children, who lived with her and over whom she had the *patria potestas.*

Besides the admissions included in the answer of the Treasurer, needless to enumerate herein, the case was submitted to the Tax Court on the following stipulation of facts:

"That petitioner was notified of the deficiencies involved herein on January 30, 1949 and that said petitioner timely submitted the questions of law to the Income Tax Bureau which decided the case against petitioner on February 24, 1949.

"It is accepted that Ana Adelaida and Carlos Juan Bianchi Foote, minor children, filed separately their income tax returns for the years 1941–43; that the income obtained by said minors for the years 1941–43 is derived from real property inherited by said minors from their grandfather Juan Bianchi Rosafa,

father of the late first husband of Ana Elena Foote, the mother of said minors, who is at present remarried to petitioner.

"It is accepted that the minors were at the time in question under the *patria potestas* of their mother Ana Elena Foote and that they lived with her."

Petitioner contends that the income accrued from the property inherited by the minors is owned by the children and belongs to them, and that therefore it was incumbent on them to file—as they actually did—the income tax returns and to pay the tax on said property, without petitioner being bound to include said income in his returns.

In deciding the case, the Tax Court applied §§ 1301 and 1303 of the Civil Code, 1930 ed.,[1] reaching the conclusion that the aforesaid income was conjugal property and that therefore, pursuant to § 24(*b*) of the Income Tax Act—No. 74 of August 6, 1925, as amended—the petitioner and his wife were bound to file a single joint return and to compute the tax on the aggregate income.

 Petitioner urges that the provisions of § 1301 have no bearing on the question involved herein and that § 1303 is not in point either as far as conjugal property is concerned, for said provisions exclusively refer to the usufructuary

---

[1] Said Sections provide:

"Section 1301.—To the conjugal partnership belong:

"1. Property acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only.

"2. That obtained by the industry, salaries, or work of the spouses or of either of them.

"3. The fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses.

"Section 1303.—The right to a usufruct or pension, belonging to one of the spouses, either in perpetuity or for life, shall form part of his or her own property; but the fruits, pensions, and interest due, during the marriage, shall be partnership property.

"In this provision is included the usufruct which the spouses have in the property of their children, even though they be of another marriage."

quota corresponding by inheritance to the surviving spouse in the property inherited by their children, whether they be of age or not, this Section not including the usufruct of the property of the unemancipated children, which belongs, pursuant to § 155 of the Civil Code, 1930 ed.,[2] to the parents "having *potestas* over him whilst he lives in their company" and that since petitioner does not have the *potestas* over the aforesaid minor children, the income accrued from their property can not prejudice his rights.

We can not agree with petitioner as to the inapplicability of §§ 1301 and 1303 to the question involved herein, and much less as to the scope attributed to § 1303, in connection with which he quotes the following commentary from Manresa:

"A mere reading of the Section immediately shows a noticeable omission: it only speaks of what belongs to one of the spouses either in perpetuity or for life, words which should be applied to pensions, although they seem to refer also to the usufruct, because it seems proper to speak of perpetual pensions, although actually they are not such; but one never speaks of perpetual usufruct, nor are they conceivable in the spirit of our Code.

". . . . . . . .

"Despite all the efforts of the lawmaker and all the theories of the textwriters, yet, it is difficult to separate, in the usufruct as well as in the pension, the right itself from its own and special contents. Except in certain pensions, such as annuities, as to which there is no doubt, and also except in cases where the right to the usufruct suffers a transformation or substitution, once the use and enjoyment of the thing is eliminated from the usufruct, and the periodical payments is taken away from the pension, whether in fruits or in cash, what is left represents

---

[2] Said Section provides:

"Property acquired by an unemancipated child by labor or industry, or for any valuable consideration, belongs to the said child, but the usufruct thereof belongs to the parents having *potestas* over him whilst he lives in their company; but if the child, with the consent of his parents, lives independently, he shall be deemed emancipated for all effects as regards the said property, and he shall be the full owner and have the usufruct and administration thereof."

naught, merely the appearance of something that is embodied in the very enjoyment. That is why the right to a usufruct must not be alienated irrespective of its very function or content, because this is not a sort of naked ownership in which sooner or later the income of the fruits or of the pension shall be included. Therefore, in short, that which the law considers as capital or the own right of one of the spouses, actually becomes a shadow of the function or enjoyment itself. When the usufructuary or the spouse having the life annuity dies, his wrongly called capital dies with him. The other spouse survives and continues with what is called the income of fruits, but nothing more. Capital and fruits, dispensing with subtleties and obscure distinctions, represent one and the same thing." 9 Manresa, *Comentarios al Código Civil,* 1930 ed., pp. 520–21.

The author of the previous commentary, on page 579 of Volume 9, 1950 ed., affirms that: "Dispensing with this theoretical considerations, § 1.403 [1303 of our Civil Code, 1930 ed.] . . . establishes that during marriage the conjugal partnership subrogates in the right of the usufructuary spouse or pensioner, receiving all the fruits and incomes which would correspond to that spouse." In addition to the usufructuary quota—obviously included in § 1303—said Section also includes the legal usufruct which the father or mother with *patria potestas* has in the property of his children. On pages 581–82 of the afore-cited volume the same commentator states:

"Legal usufruct.—The Code, in establishing the general rule regarding usufruct, refers to both the legal and the voluntary usufruct. The second paragraph of the Section expressly includes the usufruct which the spouses have in the property of their children even though they be of another marriage. The conjugal partnership shall also bear the support of the family and the education of the children in common and of the legitimate children of only one of the spouses; therefore, nothing is more natural than to include, in turn, the usufruct which the spouses have in the property of the children within the partnership property.

"By the same token, the usufruct of the surviving spouse who marries for the second time is also included in § 1.403."

Scaevola, in Vol. 22, *Código Civil*, pp. 202 *et seq.* states as follows:

"The right to usufruct as well as to pension is none other than one of the several kinds of properties or rights which are brought to the marriage by the spouse as his or her own, which is considered separate property under par. 1 of § 1.396. As to the fruits, pensions and interests, it is also set forth in general terms in § 1.401, that they belong indistinctly to the conjugal partnership when collected or accrued during the marriage and are derived from the partnership property or from that which belongs to either of the spouses. Therefore, § 1.403 contains nothing new nor does it set forth any exception whatsoever to what was previously established, and it might be entirely eliminated without creating any confusion of importance, in practice.

"But throughout the history of conjugal property, one of the favorite points of argument on which writers have dealt has been precisely that of usufruct, not only in general, but particularly, with reference to certain cases deserving special attention, among which stands out prominently that of the usufruct of one of the spouses in the property of any one of the children of a previous marriage. In order to overcome the former diversity of opinion, and avoid any future difference, the lawmaker felt the need of setting forth the special provisions of § 1.403: at first, one of a general character, in the sense already indicated, and another, in particular terms, which is the last paragraph of the Section, including the usufruct that the spouses have in the property of their children, even though they be of another marriage."

When the father of the minors Ana Adelaida and Carlos Juan Bianchi Foote died, his widow—now petitioner's wife —acquired the *patria potestas* and custody of said minors. During her widowhood, the legal usufruct of the property acquired by her children—by inheritance from their grandfather—was her separate property as was also the income derived from said usufruct. Upon later marrying petitioner, the conjugal partnership between both spouses was established by operation of law, the proceeds or income de-

rived from said legal usufruct [3] being regarded henceforth as conjugal property. The fact that the legal usufruct, because it is not alienable, is not an absolute right, *Suárez v. Registrar of Guayama*, 35 P.R.R. 466, does not militate against the doctrine set forth, even though we agree that it is one of a special character since the father was not bound to give security. Sections 419 and 420 of the Civil Code, 1930 ed.

Although the legal usufruct adjudicated to the parents can not be freely alienated due to the better right of the child as against that of the creditors of the parent and of the conjugal partnership—insofar as the parents must provide with the fruits yielded by the property of their children for all their necessities—however, the remainder may be used and is liable for the other obligations of the conjugal partnership. 2 Manresa, *Comentarios al Código Civil*, 36. There is nothing unusual about it, because the Code provides, paragraph 5, § 1308, Civil Code, that the conjugal partnership shall be liable for "the support of the family and the education of the children in common, and of the legitimate children of one of the spouses only." It is evident that although petitioner's wife and not petitioner, because he is not their father, has the *patria potestas* over Ana Adelaida and Carlos Juan Bianchi, minors, § 1308 in the afore-cited paragraph, however, imposes on the conjugal partnership —and consequently on petitioner as administrator—family obligations which it must attend. A deep human philosophy which justifies the existence of the ruling involved herein,

---

[3] Even if we ignored § 1303, cited in the opinion, the rents coming from the legal usufruct of petitioner's wife on the property of her children would always be considered as conjugal property pursuant to the general provisions of paragraph 3 of § 1301 of the Civil Code, 1930 ed., which provides that to the conjugal partnership belong "The fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses."

gives life to those provisions. It is thus illustrated by Scaevola's commentaries on page 284, Vol. 22, of his *Código Civil*:

"The Code assumes that when a widow or widower with children remarries, the other spouse respects and identifies himself insofar as possible with the situation that is created, and offers to kindly help all those persons with whom he acquires the legal obligation of sharing his life. A strict and arid justice imposes on the father or mother the exclusive obligation of supporting the child at his or her expense, independently of the economic means of the other spouse. But if the legitimate child who lives in the company of his parent or of the new spouse is going to contribute, as if he were the child of both, to the satisfaction of the spouses and to participate in all their misfortunes; if he is going to be reared together with the other children of the new marriage, and is perhaps going to spend together with them the sweet tender years of childhood and be their companion and brother, is it not rather repugnant to the constitution and functioning of the family to begrudge him the bread he eats, the clothing he wears out, the education he receives, because he unfortunately did not receive from his late father sufficient property to satisfy amply his necessities?"

Section 15(*a*) of the Income Tax Act defines the term "gross income" as follows:

"The term 'gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including in the case of the officers and employees of The People of Porto Rico or of any political subdivision thereof, the compensation received as such), of whatever kind and in whatever form paid, or from profession, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, partnership profits, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever; . . ."

Under the provisions of the afore-cited Section, the rents derived from the legal usufruct constitute an income taxable

to the conjugal partnership. *Usufruct* pursuant to § 396, Civil Code, 1930 ed., is "the right to enjoy a thing owned by another person and to receive all the products, utilities and advantages produced thereby, under the obligation of preserving its form and substance, unless the deed constituting such usufruct or the law otherwise decree." We have seen that the Civil Code, § 1303, regards as property belonging to the conjugal partnership the usufruct that the spouse has in the property of his children even though they be of another marriage. The incomes derived from the property of said children do not belong to them as petitioner contends. They belong to the conjugal partnership by a provision of law and under said circumstances, as in the case of the rents yielded by any other separate property that the petitioner's wife could have brought to the marriage, they must be included in the income tax return that petitioner and his wife are bound, pursuant to § 24 (*b*) of the Act, to render in a single joint return.

█ Petitioner contends that when Ana Adelaida and Carlos Juan Bianchi Foote, minor children, rendered separate tax returns for the years 1941 and 1943 they complied with the provisions of the Act as to the obligation of rendering an income tax return in the circumstances established by § 24 of the Income Tax Act, and that by acting thus they also availed themselves of § 225 [4] of Regulation No. 1 of the Treasurer on that matter.

---

[4] Said Section provides:

"Article 225—Return on Income of Minor—An individual under the statutory age of majority is required to render a return of income if he has a net income of his own of $1,000 or over, or a gross income of $5,000 or over, for the taxable year. If he is married, see Article 223. If a minor has been emancipated by his parent, his earnings are his own income, and such earnings, regardless of amount, are not required to be included in the return of the parent. If the aggregate of the net income of a minor from any property which he possesses and from any fund held in trust for him by a trustee or guardian, and from his earnings in case he has been emancipated, is at least $1,000 or his gross income is at least $5,000, a return as in the case of any other individual must

The provisions of the Section of the Regulation which petitioner invokes, however, do not have the scope that he attributes to them nor do they support him in his contention. Aside from the fact that the income involved may be regarded as community property pursuant to the Civil Code—as a result of which petitioner was bound to include the income to which we refer, in his income tax returns—that same regulation establishes the presumption which has not been overcome herein, of the mother's right to said rents.

In view of the foregoing, we hold that the Treasurer acted correctly in including in the returns rendered by petitioner for the years 1941 and 1943 the income obtained from the real property owned by the minor children of his wife after consolidating the returns rendered by them separately for said years, with those of petitioner and his wife [5] and that, consequently, the Tax Court did not err in dismissing the complaint.

Judgment appealed from will be affirmed.

Mr. Chief Justice Todd, Jr., did not participate herein.

### ORDER

#### ON MOTION FOR RECONSIDERATION
#### September 29, 1952.

The foregoing motion for reconsideration is denied. However, since petitioner called our attention to the fact that in *Blanco* v. *Tax Court*, 72 P.R.R. 799, 807, we held that: "Since the burden of the inheritance tax falls in this case on the minor daughters, they alone were allowed to deduct it from

---

be made by him or by his guardian, or some other person charged with the care of his person or property for him. See Article 231. In the absence of proof to the contrary, a parent will be assumed to have the legal right to the earnings of the minor and must include them in his return."

[5] The Treasurer granted petitioner, upon including among his incomes those obtained from the usufruct of his wife, a credit for $400 for each one of the minor children, obviously considering them, pursuant to law as, petitioner's dependents.

their income," . . . which is, in his opinion, contrary to our decision of September 12, 1952, and as it is not in conformance with our actual view on that particular point, we reject that *dictum* as incorrect.

Mr. Chief Justice Todd, Jr., did not participate herein.